UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MARIE THOMPSON,<br><br>　　　　　Plaintiff,<br>　　v.<br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | No. CV 15-9608 AS<br><br>**MEMORANDUM OPINION AND ORDER OF REMAND** |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**I. PROCEEDINGS**

On July 14, 2011, Plaintiff Michelle Marie Thompson ("Plaintiff") applied for supplemental security income benefits, alleging a disabling condition beginning February 1, 2010. (AR 135-41). On February 12, 2014, Administrative Law Judge ("ALJ") Robert

A. Evans examined the records and heard testimony from Plaintiff and vocational expert ("V.E.") Elizabeth G. Brown-Ramos. (AR 29-44). On March 6, 2014, the ALJ denied Plaintiff benefits in a written decision. (AR 14-24). The Appeals Council denied review of the ALJ's decision. (AR 1-4).

On December 14, 2015, Plaintiff filed a Complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c) alleging that the Social Security Administration erred in denying benefits. (Docket Entry No. 1). On April 28, 2016, Defendant filed an Answer to the Complaint, (Docket Entry No. 14), and the Certified Administrative Record ("AR"), (Docket Entry No. 15). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 11, 12). On July 20, 2016, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions on Plaintiff's claims. (Docket Entry No. 17).

## II. SUMMARY OF ALJ'S DECISION

The ALJ applied the five-step process in evaluating Plaintiff's case. (AR 14-16). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the application date. (AR 16). At step two, the ALJ found that Plaintiff's severe impairments included chronic right knee pain, osteoarthritis, chronic low back pain, depressive disorder and morbid obesity. (AR 16). At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 16-17).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the further limitations that Plaintiff could "understand and follow simple instructions" and should not "deal directly with the public." (See AR 17). In making his RFC finding, the ALJ ruled that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her impairments were not credible because her statements were inconsistent with objective medical evidence, her self-reported daily activities, and her behavior during the hearing. (AR 19, 22). The ALJ also summarized the medical evidence and assigned weight to the opinions of various physicians, including consultative psychiatric examiner Stephan Simonian, M.D. (AR 19-22). The ALJ characterized Dr. Simonian's opinion as assessing, inter alia, a "moderately limited ability to do detailed and complex instruction [and] to relate to and interact with her supervisors, co-workers, and the public" and assigned the opinion moderate weight. (AR 21-22).

At steps four and five, the ALJ determined that Plaintiff was unable to perform past relevant work but that she could seek work as an addresser, a bonder (electronics), or a touch-up screener. (AR 22-24). Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 24).

### III. STANDARD OF REVIEW

This court reviews the Administration's decision to determine if the decision is free of legal error and supported by substantial

evidence. See Brewes v. Commissioner of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**IV. PLAINTIFF'S CONTENTIONS**

Plaintiff raises two claims of error. First, Plaintiff claims that the ALJ improperly rejected portions of Dr. Simonian's assessment without explanation and failed to include limitations assessed by Dr. Simonian in the RFC. (Joint Stip. at 4-10, 13-15). Second, Plaintiff claims that the ALJ failed to provide clear and convincing reasons for rejecting her testimony as not fully credible. (Id. at 15-18, 23-26).

**V. DISCUSSION**

After reviewing the record, the Court finds that Plaintiff's second claim warrants remand for further consideration. The Court declines to address Plaintiff's other claim.

4

**A.   The ALJ's Rejection Of Plaintiff's Excess Pain Testimony Is Not Supported By Substantial Evidence**

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of her subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 806 F.3d 487, 492-93 (9th Cir. 2015) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)). In this case, because there is no evidence of malingering, the "clear and convincing reasons" standard applies.

Several portions of the administrative record are relevant to Plaintiff's claim that the ALJ erroneously rejected her "excess pain" testimony. (Joint Stip. at 15-18, 23-26). In a 2011 Exertion Questionnaire, Plaintiff reported that she used crutches to walk, struggled to stand in the shower, and generally took the bus anywhere that she needed to go. (AR 165). Plaintiff claimed that "every move" was painful and that she also experienced pain if she sat for too long. (AR 165). Plaintiff further reported that she could wash the dishes if she sat while doing so and that, twice a month, she shopped for groceries with the assistance of her son and a mobility

scooter. (AR 166). Plaintiff claimed that she could do housework for "about an hour" before pain prevented her from performing further work. (AR 167). Plaintiff reported that she napped "maybe 2-3 hours" every day. (AR 167).

In a 2012 Adult Function Report, Plaintiff reported that it took her thirty minutes to stand up each morning and that she had to walk with a cane. (AR 190). Plaintiff stated that it also took her two and a half hours to "wash up" every morning and that her ailments generally prevented her from standing while dressing, bathing, caring for her hair, shaving, and cooking. (AR 191). Plaintiff acknowledged that she was able to prepare sandwiches, frozen dinners, salads, turkey burgers, and foods prepared in a toaster oven. (AR 192). Plaintiff stated that she sometimes prepared food weekly due to her difficulty standing and that it took her two and a half hours to cook. (AR 192). Plaintiff claimed that she "use[d] Access," a paratransit program, to go out at least three times a week and that she shopped for groceries four times per month with the assistance of a helper and a mobility scooter. (AR 193). Plaintiff acknowledged that she could pay bills, count change, handle a savings account, and use a checkbook and money orders. (AR 193). Plaintiff stated that she went to the movies once a month and to church "when [she felt] like giving up." (AR 194).

During her hearing, Plaintiff testified that she had last worked in 2005 but had gotten "hurt" in 2009. (AR 32-34). Plaintiff brought a walker to the hearing, and she testified that she was unable to walk without the walker or a cane, although recently the

6

cane had not been giving her sufficient support. (AR 34). Plaintiff testified that, although she was able to shower by herself, she sometimes had to sit on a railing in the shower. (AR 34-35). Plaintiff also testified that she could sit for about an hour at a time before needing to stand and walk around using the walker. (AR 35-36). Plaintiff further testified that, using the walker, she could stand without walking for about 45 minutes at the longest. (AR 36). Plaintiff clarified that her pain was "ongoing" and "always there," even with medication. (AR 36). Plaintiff also testified that her ailments prevented her from "go[ing] out, hav[ing] fun with somebody, walk[ing], you know, whatever." (AR 37).

The ALJ rejected Plaintiff's pain testimony in the following excerpt:

> After careful consideration of the evidence, the [ALJ] finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of her symptoms are not credible to the extent they are inconsistent with the [RFC]. First, the [ALJ] notes that [Plaintiff's] activities of daily living, including preparing simple meals (i.e., sandwiches, frozen meals, salad, turkey burgers), using Access to get around, shopping with the use of a scooter, occasionally attending church, paying bills, counting change, handling a savings account, and using a

checkbook/money order, for example, are inconsistent with her allegation of total disability.

The medical evidence of record also does not substantiate [Plaintiff's] allegations of disabling limitations. [Plaintiff's] complaints regarding the frequency, severity and duration of her back pain, neck pain, knee pain, and obesity do not justify any further limitations than those based on the objective medical evidence and are generally consistent with the limitations found. [. . .] In the absence of objective medical evidence to support these allegations, the ALJ gives minimal weight to [Plaintiff's] testimony as to a total preclusion as to all work during the adjudicative period. These allegations are well accommodated in the [RFC] adopted in this case. [Plaintiff] was noted to use a walker at the hearing, however, as discussed below, the [V.E.] testified that the use of a cane would NOT affect the sedentary jobs noted by the [V.E.]. [. . .]

Additionally, after carefully observing [Plaintiff] at the hearing, the [ALJ] further notes that her verbal responses and overall demeanor were not suggestive of a person who is experiencing disabling limitations. While these observations are just one of many factors that the [ALJ] has considered, she was able to enter and exit the hearing room without much difficulty, and to answer questions, all despite her alleged disabling limitations.

(AR 19, 22 (complete summary of medical evidence and citations omitted)).

The ALJ's adverse credibility finding is not supported by substantial evidence. First, the ALJ overstated the degree to which Plaintiff's daily activities were consistent with the abilities necessary to secure and maintain employment. For example, the ALJ relied on evidence and testimony addressing Plaintiff's daily activities but failed to note that Plaintiff performed most of the cited activities infrequently, with assistance, and slowly or with substantial pain. (AR 165-67, 190-94). Therefore, Plaintiff's activities fail to support the ALJ's finding that Plaintiff can secure and maintain employment or that Plaintiff's pain is not as severe as she claims. The Ninth Circuit has cautioned that "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (finding "only a scintilla" of evidence supporting ALJ's adverse credibility finding where claimant was able to go grocery shopping with assistance, walk approximately an hour in the mall, get together with friends, play cards, swim, watch television, read, undergo physical therapy, and exercise at home); see also Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (activities of daily living affect a claimant's credibility "[o]nly if the level of activity [is] inconsistent with [the claimant's] claimed limitations"; ALJ erred by "not fully accounting for the context of

materials or all parts of the testimony and reports," resulting in paraphrasing of record material that was "not entirely accurate regarding the content or tone of the record").

The ALJ also rejected Plaintiff's testimony based on his own observations of Plaintiff's conduct during and immediately following the hearing. (AR 22). Although an ALJ's personal observations do not necessarily render a decision improper, the Ninth Circuit has repeatedly condemned so-called "sit and squirm" jurisprudence. See Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999 (citing Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985)). Here, the Court has no difficulty concluding that the ALJ's observations during the fourteen-minute hearing, (AR 31, 44), provide insufficient support for an adverse credibility finding. See Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984) ("The fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible.").

The ALJ also discredited Plaintiff's testimony on the grounds that it was not substantiated by medical evidence. (AR 19). This reason, standing alone, is insufficient to support an adverse credibility finding. Light v. Social Sec. Admin., 119 F.3d 789, 792-93 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.").

**B.    The Court Cannot Conclude That The ALJ's Error Was Harmless**

"[H]armless error principles apply in the Social Security . . . context." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006)). Generally, "an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" Id. (citing Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)).

The Court cannot conclude that the ALJ's errors were harmless. The limiting effects of Plaintiff's pain are directly relevant to assessing her RFC. A claimant's RFC "may be the most critical finding contributing to the final . . . decision about disability." See McCawley v. Astrue, 423 F. App'x 687, 689 (9th Cir. 2011) (quoting SSR 96—5p). Here, Plaintiff's RFC was central to the ALJ's determination that there was work that she could perform despite her limitations. (AR 23-24). Because the Court cannot determine that the ALJ's errors were "inconsequential to the ultimate nondisability determination," the errors cannot be deemed harmless. See Carmickle, 533 F.3d at 1162.

**C.    Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative

proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman, 211 F.3d at 1179-81.

Here, the Court remands because the ALJ provided insufficient support for his decision to discount Plaintiff's "excess pain" testimony. The record does not affirmatively establish that the ALJ was required to find Plaintiff credible, nor does it establish that the ALJ would necessarily be required to find Plaintiff disabled if these deficiencies were remedied. Remand is therefore appropriate.

The Court has not reached issues not discussed supra except to determine that reversal with a directive for the immediate payment of benefits would be inappropriate at this time. In addition to the issues addressed in this order, the ALJ should consider on remand any other issues raised by Plaintiff, if necessary.

//
//
//

## VI. CONCLUSION

For the foregoing reasons, the decision of the Administrative Law Judge is VACATED, and the matter is REMANDED, without benefits, for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 12, 2016

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE